**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JANE DOE,

      *Plaintiff,*

  v.

DISTRICT OF COLUMBIA,

      *Defendant.*

Case No. 1:19-cv-01173-CJN

<u>**PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND**</u>
<u>**MEMORANDUM OF LAW IN SUPPORT**</u>

Respectfully submitted,

/s/ Michael Ellement
Daniel M. Rosenthal (D.C. Bar No. 1010473)
Michael Ellement (D.C. Bar No. 1521035)
JAMES & HOFFMAN, P.C.
1130 Connecticut Avenue, N.W., Suite 950
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 (facsimile)
dmrosenthal@jamhoff.com
mpellement@jamhoff.com

*Counsel for Plaintiff*

Date:  May 21, 2021

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

I.   Procedural History and Factual Background ................................................... 2

    A.   The District received notice of Ms. Doe's claims no later than January 10, 2018 ............ 2

    B.   The District allowed text messages from critical witnesses to be destroyed after January 10, 2018 ................................................................................................. 3

        1)   Destruction of Mr. Roe's messages in approximately July 2018 ................................ 4

        2)   Destruction of the Principal's messages in approximately May 2018 and March 2020 ................................................................................................. 4

        3)   Destruction of the Luis Morales's messages in approximately November 2018 .......... 6

    C.   The District never instructed Mr. Roe, the Principal, or Morales to preserve their text messages, and made no other effort to collect or preserve the messages until it was too late ................................................................................................. 7

    D.   In 2019, Plaintiff filed this lawsuit and sought discovery regarding text messages ........... 9

II.  The Court should sanction the District for failing to preserve ESI and order appropriate sanction ................................................................................................. 11

    A.   Standard for sanctions under Rule 37(e) ................................................................ 11

    B.   The District's preservation obligation arose on January 10, 2018 .................................... 13

    C.   Text messages from the phones of Mr. Roe, the Principal, and Mr. Morales should have been preserved ................................................................................................. 14

    D.   The District failed to take reasonable steps to preserve text messages, prejudicing Plaintiff ................................................................................................. 14

        1)   Mr. Roe and the Principal ................................................................ 15

        2)   Mr. Morales ................................................................................................. 18

    E.   The Court should award appropriate sanctions ................................................................ 22

III. Conclusion ................................................................................................. 24

Certificate of Service ................................................................................................. 26

Proposed Order ................................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Agility Pub. Warehousing Co. K.S.C.P. v. DOD*, 2017 U.S. Dist. LEXIS 220625 (D.D.C. Mar. 30, 2017) .................................................................................................................12, 18

*Arista Records, Inc. v. Sakfield Holding Co. S.L.*, 314 F. Supp. 2d 27 (D.D.C. 2004) .................12

*Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64 (D.D.C. 2017) .....................................19

*Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38 (D.D.C. 2019)...................................11, 12, 17, 24

*Cahill v. Dart*, No. 13 C 361, 2016 U.S. Dist. LEXIS 166831 (N.D. Ill. Dec. 2, 2016) ..............24

*Cahill v. Dart*, No. 13 C 361, 2016 U.S. Dist. LEXIS 169195 (N.D. Ill. Mar. 4, 2016)..............24

*DR Distribs., LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2021 U.S. Dist. LEXIS 9513 (N.D. Ill. Jan. 19, 2021) ...............................................................................................19

*Eller v. Prince George's Cty. Pub. Sch.*, No. TDC-18-3649, 2020 U.S. Dist. LEXIS 234367 (D. Md. Dec. 11, 2020) ...............................................................................................13, 23

*Gerlich v. DOJ*, 711 F.3d 161 (D.C. Cir. 2013) ....................................................................12, 18

*Jeanblanc v. Oliver T. Carr Co.*, 1992 U.S. Dist. LEXIS 10765, 1992 WL 189434 (D.D.C. 1992) .........................................................................................................................12

*Major Tours, Inc. v. Colorel*, No. 05-3091(JBS/JS), 2009 U.S. Dist. LEXIS 68128 (D.N.J. Aug. 4, 2009) .........................................................................................................................19

*Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 U.S. Dist. LEXIS 216011 (N.D. Ill. Mar. 23, 2018) .........................................................................................................................22–23

*United States ex rel. Fago v. M & T Mortg. Corp.*, 235 F.R.D. 11 (D.D.C. 2006) ........................3

*Vasser v. Shulkin*, Civil Action No. 14-0185 (RC), 2017 U.S. Dist. LEXIS 193174 (D.D.C. Nov. 22, 2017) .................................................................................................12, 14, 18, 23

*Wells v. Berger, Newmark & Fenchel, P.C.*, Civil Action No. 07 C 3061, 2008 U.S. Dist. LEXIS 21608 (N.D. Ill. Mar. 18, 2008).........................................................................................23

## Rules

Fed. R. Civ. Pro. 37(e) ........................................................................................ *passim*

Fed. R. Civ. Pro. 37(e)(1) ...............................................................................12, 17, 23

Fed. R. Civ. Pro. 37(e)(2) ..............................................................................................13

Fed. R. Civ. Pro. 37(e), Advisory Committee Notes to 2015 Amendment ........................... *passim*

Plaintiff Jane Doe[1] hereby asks the Court to sanction Defendant, the District of Columbia, for failing to preserve crucial evidence in this matter.

In this case, former District employee Ms. Doe alleges that she was sexually harassed and assaulted by another District employee, Mr. Roe.  She further alleges that the District retaliated against her for reporting Mr. Roe's misconduct.

After the District received notice of Ms. Doe's allegations, it failed to preserve text messages from the phones of three critical District witnesses—the alleged harasser, Mr. Roe; his direct supervisor, the Principal of Smith Elementary School; and Plaintiff's supervisor at the Department of Behavioral Health, and alleged retaliator, Luis Morales.  The messages were subsequently destroyed and are unrecoverable.  Aside from Plaintiff herself, these individuals are likely the most important witnesses in this case.

The District flagrantly violated its discovery obligations.  It concedes that it did nothing to inform the alleged harasser or school principal of any preservation obligation, issued no litigation hold notice to them, and did nothing to collect or preserve their text messages until after the messages were irretrievably destroyed.  As to Mr. Morales, the District claims that it sent him a hold notice, but he testified that he never received any instruction to retain text messages.

Further, in discovery in this case, the District failed to be forthright about its loss of this evidence.  The District initially delayed responding to Plaintiff's request for months, insisting numerous times to both Plaintiff's counsel and the Court that it needed more time to produce requested text messages.  Much later, the District finally admitted that the messages had been destroyed.  Even then, however, the District falsely assured the Court and Plaintiff's counsel that

---

[1]     We use the pseudonyms previously approved by the Court.  *See* Dkt. 2.

the relevant witnesses had been told of their preservation obligations prior to the messages being lost.  Yet, the school Principal, Mr. Morales, and the District's own 30(b)(6) designee later testified no such preservation instruction was ever given.[2]

The District's conduct is sanctionable.  As explained below, the missing messages place Plaintiff at a disadvantage and prejudice her ability to prove central elements of her claims.  The Court should issue remedial sanctions to cure the prejudice to Plaintiff.

On May 19, 2021 counsel for the parties discussed via telephone the basis for Plaintiff's motion and her requests for relief.  Counsel for the District stated that the District is opposed to the motion and the relief sought.

## I.   Procedural History and Factual Background

### A.   The District received notice of Ms. Doe's claims no later than January 10, 2018.

As alleged in the Amended Complaint, Ms. Doe worked for Defendant as a school mental health clinician, and was assigned to work at Smith Elementary School beginning in February 2017.  (Amend. Compl. ¶ 29).  She worked at the school pursuant to a joint program between District of Columbia Public Schools (DCPS) and the District of Columbia Department of Behavioral Health (DBH).  (*Id*. ¶¶ 11–16).

Ms. Doe alleges that Mr. Roe, then assistant principal at Smith Elementary School, sexually harassed and sexually assaulted her on several occasions in 2017 and 2018.  (*Id*. ¶¶ 34–57).  Ms. Doe reported Mr. Roe's harassment to DCPS and DBH beginning in the fall of 2017.

---

[2]     The alleged harasser, Mr. Roe, has given no testimony about the destruction of his text messages because he has asserted the Fifth Amendment privilege to avoid testifying in this case. Plaintiff has moved to compel Mr. Roe to testify on this and other matters.  *See* Dkt. 48.  If Mr. Roe ultimately testifies and provides relevant information, Plaintiff will seek leave to supplement this motion to apprise the Court of such information.

(*Id.* ¶¶ 59–71).  Specifically, as is relevant to this motion, she discussed the harassment with her DBH supervisor, Luis Morales.  Mr. Morales told Ms. Doe that he would discuss the matter with Smith Elementary School's Principal (Mr. Roe's supervisor) and also with Morales's own supervisor, Erica Barnes.  (*Id.*  ¶¶ 62–68).

In January 2018, Ms. Doe initiated a complaint with the D.C. Office of Human Rights (DCOHR) and separately made additional internal complaints to her supervisors and other D.C. government officials.  (*Id.* ¶ 72).  Defendant became aware of Ms. Doe's DCOHR complaint no later than January 10, 2018.  (Ex. K, Tapp 30(b)(6) deposition, at 158–59); *see also United States ex rel. Fago v. M & T Mortg. Corp.*, 235 F.R.D. 11, 24 (D.D.C. 2006) (party is bound by the sworn testimony of their Rule 30(b)(6) designee).[3]

Further, in a March 5, 2018 letter, DCOHR instructed Defendant that it was "required to preserve all records which may be relevant to this charge of discrimination until receiving a final disposition of the charge, including any period of appeals."  (Ex. N at 2).

**B.  <u>The District allowed text messages from critical witnesses to be destroyed after January 10, 2018.</u>**

This motion focuses on text messages sent and received by three individuals: (1) the alleged harasser, Mr. Roe; (2) the Principal of Smith Elementary school, who was Mr. Roe's supervisor; and (3) Mr. Morales, who was Ms. Doe's supervisor at DBH and who allegedly retaliated against her.  Despite the importance of each of these individuals to the current case, the District allowed text messages from their phones to be destroyed after January 2018.

---

[3]     All exhibits submitted in connection with this motion have been filed separately under seal as attachments to Plaintiff's Motion for Leave to File Documents Under Seal, filed this same day.

**1)   Destruction of Mr. Roe's messages in approximately July 2018.**

In a prior submission to the Court, the District disclosed the destruction of Mr. Roe's text messages.  On June 25, 2020, in response to a motion to compel (Dkt. 31 at 5–6), the District stated that it was no longer in possession of text messages from Mr. Roe and "has no additional text messages from Mr. Roe . . . to produce . . ."  (Dkt. 33 at 10–11 (internal quotation marks omitted)).

The District further stated that "Mr. Roe's government-issued phone was returned at the end of his employment, wiped of data, and likely re-issued, as is customary."  (*Id.* at 10). According to documents produced in discovery, the end of Mr. Roe's employment at DCPS occurred in the summer of 2018—well after the District received notice of Plaintiff's charge. *See* (Ex. L, Final SF-50) (listing resignation date as July 13, 2018).

Because Mr. Roe has refused to testify in this case—which is the subject of a pending motion, Dkt. 48—Plaintiff has had no opportunity to question him regarding how he used his phone or who he exchanged messages with.  However, as discussed below, the record suggests at a minimum that Mr. Roe exchanged messages with the school Principal (his supervisor) regarding complaints of harassment against him.

As a result of the destruction of Mr. Roe's text messages, the only text messages from Mr. Roe produced in this case are those provided by Plaintiff herself.  As discussed in more detail below, the District appears to have done nothing to preserve Mr. Roe's text messages before they were deleted.

**2)   Destruction of the Principal's messages in approximately May 2018 and March 2020.**

In the same June 25 filing disclosing the destruction of Mr. Roe's messages, the District disclosed the loss of the Principal's messages.  Specifically, the District wrote, "although the

Principal is still employed by the District and was instructed by DCPS General Counsel staff that her ESI was subject to an OAG-issued litigation hold, she recently lost her government phone and has yet to be provided a new one." (Dkt. 33 at 10.).[4]

According to the Principal's deposition testimony, her text messages from the 2017-2018 school year were deleted likely around the end of that school year (May 2018), when she moved to a new school and received a new cell phone. (Ex. I at 93–94). Further, she lost her most recent DCPS-issued cell phone in March or April of 2020. (*Id.* at 91). She had not backed-up or saved any of the messages from the phones. (*Id.*). The text messages from her personal cell phone were also deleted. (*Id.* at 98–99).

The record indicates that the deleted messages may include messages highly relevant to this case. The Principal testified in a deposition that she used both her work phone and personal phone to exchange text messages with other District employees, including Mr. Roe. (*Id.* at 86–88; 97–99). The Principal was unable to rule out the possibility that she sent or received text messages related to harassment complaints made by Plaintiff; that she exchanged text messages regarding the complaints of at least three other staff members who complained that Mr. Roe harassed them or made them feel uncomfortable; or that she exchanged text messages with DBH employees, including Mr. Morales and Ms. Barnes. (*Id.* at 87–90; 117–18; 136–39; 159–60; 180–82).

---

[4]     As discussed below, discovery has shown that the quoted statement is false insofar it states that the Principal "was instructed by DCPS General Counsel staff that her ESI was subject to an OAG-issued litigation hold." In fact, both the Principal and DCPS's designee under Rule 30(b)(6) testified that no such instruction was given, in direct contradiction to the District's earlier representation to the Court. *See infra* at 7–8.

In fact, the record suggests that the Principal did exchange text messages related to complaints of harassment against Mr. Roe.  Specifically, in emails that the Principal exchanged with a teacher who accused Mr. Roe of touching her inappropriately and retaliating against her, the Principal specifically referenced text messages that she exchanged with the teacher.  (*Id.* at 136–39; Ex. J at Doe-19dv1173-00054233, Emails between the Principal and Parker).  Such text messages have not been produced by the District.  Nor has the District produced any other text messages to or from the Principal.

As discussed below, the District appears to have done nothing to preserve the Principal's messages before they were deleted.

### 3)  Destruction of the Luis Morales's messages in approximately November 2018.

Mr. Morales testified that all text messages from his DBH cell phone prior to approximately November 2018 were deleted when he did a password update on his phone around that time.  (Ex. H, Morales Tr. at 79–81).  Work-related text messages from his personal cell phone were also deleted sometime before the end of 2018.  (*Id.* at 74–76).  Mr. Morales further testified that, before November 2018, he took it upon himself to retain certain text messages, without any instruction from the District.  (*Id.* at 70–76).  However, the only messages that he saved were those between himself and Ms. Doe; he did not save messages with other custodians *about* Ms. Doe or Mr. Roe, nor did he save any other messages which may be relevant to this case.  (*Id.*).

Mr. Morales testified that he used his DBH-issued phone and personal phone during the 2017 and 2018 school years to exchange text messages with other DBH employees, including Ms. Barnes and members of his supervisory team.  (*Id.* at 66–67).

6

The record shows that Mr. Morales sent numerous text messages to Ms. Barnes regarding Plaintiff's complaints.  *See* (Exs. H, Morales Tr. at 82–85; O, Barnes Tr. at 108–09).  According to Mr. Morales, he likely began exchanging text messages with Ms. Barnes on this topic as early as the fall of 2017.  (Ex. H. at 142–43).

Mr. Morales could not rule out the possibility that he exchanged text messages about Ms. Doe with other clinicians that he supervised; that he exchanged messages regarding Mr. Roe; or that he exchanged messages with the Principal of Smith Elementary.[5]  (*Id.* at 68–69; 85–88).

Other than Mr. Morales's effort to copy some of his messages from his work phone, the District appears to have done nothing to preserve messages from Mr. Morales's work phone.

## C. <u>The District never instructed Mr. Roe, the Principal, or Morales to preserve their text messages, and made no other effort to collect or preserve the messages until it was too late.</u>

The record shows that the District did nothing to preserve text messages from the individuals at issue in this motion, including instructing them regarding preservation.

As to Mr. Roe and the Principal, Plaintiff conducted a Rule 30(b)(6) deposition of DCPS regarding efforts to preserve documents.  DCPS's designee, Jana Woods-Jefferson, testified that DCPS *did not* send a litigation hold notice to any relevant witnesses, including Mr. Roe and the Principal.  (Ex. M, Woods-Jefferson Tr. at 45–47).  She stated that while the DC Attorney General's Office sent a litigation hold notice to DCPS's general counsel's office in May 2019, the office never forwarded the letter to relevant custodians or provided other preservation instructions to Mr. Roe, the Principal, or other staff with information related in the instant case.

---

[5]     Plaintiff alleges that Mr. Morales communicated with some of Plaintiff's co-workers, who were also supervised by Mr. Morales, regarding Plaintiff's allegations. Amend. Compl. ¶¶ 76–85.  However, Plaintiff does not know whether any such communications took place by text message.

(*Id.* at 45–47).  The designee further testified that DCPS made no other efforts to ensure that documents or electronically stored information was retained in this matter.  (*Id.* at 48-51).

The Principal confirmed the designee's testimony.  She testified at her deposition that she was never instructed to save or preserve text messages in connection with the instant case, or related to Ms. Doe.  (Ex. I at 95–96).  Further, according to the Principal, the District never asked her to produce copies of text messages related to the case prior to her December 23, 2020 deposition.  (*Id.* at 95–97).

The testimony of the DCPS designee and the Principal directly contradicted earlier representations made by the District.  Specifically, the District claimed to the Court that it had advised the Principal of her preservation obligations. (Dkt. 33 at 10–11).  Further, the District claimed to the Court and Plaintiff's counsel that it had instructed the Principal to retain messages, and that it had sought to obtain messages from the Principal in the months prior.  (Dkt. 33 at 10; Ex. D, Emails Between Counsel at 33, 52–53).  According to the DCPS designee and the Principal, these claims were simply false.

As to Mr. Morales, there is a conflict between the deposition testimony offered by two District witnesses.  DBH's Rule 30(b)(6) designee testified that DBH emailed litigation hold letters to certain DBH employees, including Mr. Morales.  (Ex. K, Tapp Tr. at 144, 148-51, 162-64).  However, Mr. Morales himself testified that he was never instructed by anyone from the District government to retain or preserve text messages related to Ms. Doe or the instant case. (Ex. H, Morales Tr. at 76).

It is clear, in any event, that DBH took no steps to confirm that Mr. Morales received the litigation hold letter, understood the letter, or did in fact preserve documents.  (Ex. K at 151–52, 167).  Nor did the District make any efforts to create a back-up of the messages, or assist Mr.

8

Morales in saving the messages.  (*Id.*).  Further, although English is not Mr. Morales' first language, DBH made no efforts beyond sending him the written preservation instructions in English to ensure that Mr. Morales understood his preservation obligations.[6]  (*Id.* at 179–80).

**D. In 2019, Plaintiff filed this lawsuit and sought discovery regarding text messages.**

In this section we briefly describe Plaintiff's discovery requests since this case began, and the District's shifting explanations for not producing the text messages.

Plaintiff submitted her First Set of Document Requests and Interrogatories to Defendant on August 26, 2019.  (Exs. A–B).  Plaintiff requested that Defendant produce "communication[s]" on a variety of topics "including but not limited to . . . text messages . . ." from relevant witnesses.  (Ex. A at 2–3 ¶ 5).

The District initially responded to Plaintiff's discovery requests on October 16, 2019, by producing a limited number of text messages that were previously disclosed during the administrative phase of Plaintiff's complaint before DCOHR.  These messages were between Plaintiff, on one hand, and Mr. Morales or Mr. Roe on the other.  However, the District produced no other text messages.

Counsel for the parties spoke by phone and corresponded numerous times during the following months.  During these exchanges, Plaintiff's counsel reiterated Plaintiff's request for text messages from Mr. Morales, Mr. Roe, and the Principal of Smith Elementary School.  *See, e.g.,* (Ex. C, January 24, 2020 Letter; Ex. D at 60–64, 70–73).  Counsel for the District committed to conducting searches for relevant documents, but insisted that more time was needed to complete the production.  *See, e.g.,* (Ex. D at 60–64, 68–70).

---

[6]    The District claims that it separately verbally notified certain DBH employees to preserve documents related to this case.  (Ex. K at 143, 179).  However, Mr. Morales was not one of the employees who was told verbally to preserve documents.  (*Id.*).

During a teleconference with the Court in February 2020, the District's counsel stated that the District could fully respond to Plaintiff's discovery requests by the end of March 2020 (Ex. E, February 26 Transcript, at 5–8).  As of June, however, the District had produced no further text messages.  Thus, on June 25, 2020, Plaintiff filed a motion to compel production of certain documents, including text messages.  (Dkt. 31 at 5–6).[7]

As discussed above, in its response to the motion to compel, the District disclosed for the first time that text messages from Mr. Roe and the Principal had been destroyed.  *See supra* at 4–5.

Over the following months, the District repeatedly requested more time to produce text messages.  *See, e.g.,* (Ex. D at 27, 33, 38, 42, 46–47).  On July 31, 2020, counsel for the District stated in an email that "We've been in touch with DBH and understand—*preliminarily*—that at least some of the custodians' devices are still available (meaning, we do have access to responsive text messages, if any exist)."  (*Id.* at 47) (emphasis added).  On October 6, 2020, after further follow-up by Plaintiff's counsel, District counsel stated that it was "[s]till working to confirm whether principal and assistant principal texts are retrievable."  (*Id.* at 33).

Between October and February, the District produced a minimal number of additional messages between Mr. Morales and his supervisor Ms. Barnes that were saved on Ms. Barnes's phone.  (*Id.* at 17–18, 23, 36).  It also reproduced duplicates of messages between Mr. Morales and Ms. Doe that it had produced earlier.  (*Id.* at 26, 32).  However, the District did not produce any messages from Mr. Morales's phone with custodians other than Ms. Doe or Ms. Barnes.  Further, the District produced no messages from the phones of Mr. Roe or the Principal.  On

---

[7]     The Court denied the motion to compel in a minute order issued on August 12, 2020.

February 9 and March 15, 2021, District counsel disclosed that the District was unable to recover any messages from Mr. Roe's or the Principal's iCloud account respectively. (Ex. D at 1, 6).

Meanwhile, in August 2020, Plaintiff sent the District her second set of discovery requests.  In those requests, Plaintiff requested copies of litigation hold letters issued by Defendant and/or information on when such hold letters were issued, to whom, and the instructions included in the letters. (Exs. F at 2–3; G at 6).

In response to these requests, Defendant refused to provide copies of the litigation hold letters, but stated in interrogatory responses on October 6, 2020 that: (1) DBH sent litigation hold letters to Mr. Morales on March 6, 2018, and May 6, 2019, with both notices encompassing text messages; (2) The DC Office of the Attorney General sent a hold letter to the general counsel of DCPS on May 9, 2019, with the notice encompassing text messages.[8]  (Ex. G at 6–7).

## II.  The Court should sanction the District for failing to preserve ESI and order appropriate sanctions.

### A.  Standard for sanctions under Rule 37(e)

Under Federal Rule of Civil Procedure 37(e), a court may issue appropriate sanctions where "electronically stored information ["ESI"] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  Fed. R. Civ. Pro. 37(e).

The duty to preserve ESI begins when "a party anticipates litigation." *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 45 (D.D.C. 2019) (citing cases).  The party must preserve "what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to

---

[8]      The interrogatory response did not identify anyone at DCPS other than the general counsel who received a hold letter. As discussed above, Mr. Roe and the Principal received no document preservation instructions.

lead to the discovery of admissible evidence, is reasonably likely to be requested during

discovery, and/or is the subject of a pending discovery request." *Arista Records, Inc. v. Sakfield*

*Holding Co. S.L.*, 314 F. Supp. 2d 27, 33 n.3 (D.D.C. 2004) (quoting *Jeanblanc v. Oliver T. Carr*

*Co.*, 1992 U.S. Dist. LEXIS 10765, 1992 WL 189434, *2 (D.D.C. 1992)).  It must take

"reasonable steps" to ensure that the ESI is preserved, including by notifying relevant custodians

of their preservation obligations.  *See Borum*, 332 F.R.D. at 46.

 Sanctions may be appropriate even where destruction of discoverable information was

negligent, as opposed to purposeful.  *Vasser v. Shulkin*, Civil Action No. 14-0185, 2017 U.S.

Dist. LEXIS 193174, at *16 (D.D.C. Nov. 22, 2017).

 If the court concludes that a party failed to retain ESI that should have been preserved,

the court may grant sanctions to cure any prejudice to a party caused by the spoliation.  Fed. R.

Civ. Pro. 37(e)(1).

 To evaluate prejudice, the court should evaluate "the information's importance in the

litigation." Fed. R. Civ. Pro. 37(e), Advisory Committee Notes to 2015 Amendment.  "The rule

does not place a burden of proving or disproving prejudice on one party or the other," as it "may

be unfair" to place the burden "on the party did not lose the information."  *Id.*; *Agility Pub.*

*Warehousing Co. K.S.C.P. v. DOD*, 2017 U.S. Dist. LEXIS 220625, at *8 (D.D.C. Mar. 30,

2017).

 The prejudice inquiry "'is unavoidably imperfect'" since the "'absence of the destroyed

evidence'" permits the court to "'only venture guesses with varying degrees of confidence as to

what that missing evidence may have revealed.'"  *Vasser v. Shulkin*, Civil Action No. 14-0185,

2017 U.S. Dist. LEXIS 193174, at *18 (D.D.C. Nov. 22, 2017) (quoting *Gerlich v. DOJ*, 711

F.3d 161, 171 (D.C. Cir. 2013)) (cleaned up).  Thus, "when 'the document destruction has made

it more difficult for a party to prove that the documents destroyed were relevant'" the court may order sanctions "'even on a very slight showing that the [missing] documents are relevant.'"  *Id.*

The particular sanctions to cure the prejudice are "entrusted to the court's discretion" and the authority to craft sanctions "is quite broad if they are necessary" to cure the prejudice.  Fed. R. Civ. Pro. 37(e), Advisory Committee Notes to 2015 Amendment.  A non-exhaustive list of potential sanctions is included in the Advisory Committee Notes: "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument . . ."  *Id.*[9]

**B.  The District's preservation obligation arose on January 10, 2018.**

Here, the District's obligation to preserve documents arose on January 10, 2018, when the District received notice of Plaintiff's charge at the D.C. Office of Human Rights.  (Ex. K, Tapp 30(b)(6) deposition, at 158–59).  *See, e.g., Eller v. Prince George's Cty. Pub. Sch.*, No. TDC-18-3649, 2020 U.S. Dist. LEXIS 234367, at *11 (D. Md. Dec. 11, 2020) ("Defendants' obligation to preserve the potentially spoliated evidence arose . . . when Defendants first received notice of Plaintiff's EEOC Charge.").

In the alternative, and at the latest, the District's preservation obligation arose when it received an explicit preservation directive from the D.C. Office of Human Rights on March 5, 2018. *See supra* at 3.

---

[9]     Subsection (e)(2) of the rule permits a specific list of harsher sanctions only where a court finds that "the party acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. Pro. 37(e)(2).  Plaintiff does not seek such sanctions here.

**C.  Text messages from the phones of Mr. Roe, the Principal, and Mr. Morales should have been preserved.**

Upon receiving notice of Plaintiff's claims, the District "should have . . . preserved" the information in question—text messages from the phones of Mr. Roe, the Principal, and Mr. Morales—under Rule 37(e).

There can be no dispute that each of these individuals is a critical witness in this case. Mr. Roe is the primary alleged wrongdoer in this matter.  The Principal and Mr. Morales were alleged to have known of the harassment and failed to take steps to remedy it. (Amend. Compl. ¶¶ 61-66, 108, 109, 116, 117, 129, 130.)  And Mr. Morales was alleged to have retaliated against Plaintiff for asserting her complaint.  (*Id.* ¶ 72-85.)

Indeed, the District itself recognized an obligation to preserve text messages from these witnesses.  Specifically, in May 2019, the District's Office of the Attorney General instructed the general counsels of DCPS and DBH to preserve "all documents, defined to include electronic documents such as . . . text messages" from each of these individuals. (Ex. G at 7.)

In sum, given the importance of these witnesses, the District was required to implement measures necessary to preserve their communications, including suspending its typical destruction practices. *Vasser v. Shulkin*, Civil Action No. 14-0185, 2017 U.S. Dist. LEXIS 193174, at *17 (D.D.C. Nov. 22, 2017).

**D.  The District failed to take reasonable steps to preserve text messages, prejudicing Plaintiff.**

The District failed to meet its obligation with regard to text messages stored on phones maintained by Mr. Morales, the Principal, and Mr. Roe.  Although the District claims that it eventually sent certain litigation hold letters, it conceded through its Rule 30(b)(6) designee that it never sent such letters to Mr. Roe or to the Principal and did nothing else to preserve their text

messages.  As to Mr. Morales, his testimony shows that he never received a hold letter and that the District did nothing else to ensure that he preserved documents.[10]  As a result of these failures, Plaintiff has been unable to obtain text messages from three critical witnesses in this case.

Below, we first address the DCPS employees (Mr. Roe and the school principal) and then discuss Mr. Morales.

### 1)  Mr. Roe and the Principal

Through the testimony of the DCPS Rule 30(b)(6) designee, the District has conceded that it never instructed Mr. Roe or the Principal of Smith Elementary School to preserve text messages.  *See supra* at 7–8.  This fact was confirmed by the Principal herself.  *See supra* at 8. And the District conceded that it did nothing else to preserve text messages from these individuals.  *See supra* at 7–8.  As a result, Mr. Roe's DCPS-issued phone was wiped of all its data when he left his employment with the District, and the Principal's text messages were deleted—months after the District became aware of Plaintiff's claims.  *See supra* at 4–5.

Copies of the Principal and Mr. Roe's messages are critical evidence for Plaintiff's claims.  While there is no telling exactly what the messages would have contained, and Plaintiff is not required to prove their contents to succeed on the instant motion, *see supra* at 13, the evidence already in the record suggests that the deleted messages likely would have supported

---

[10]      It is worth noting that, even as to the hold letters that were sent, the District acted late. Accepting the District's interrogatory answers and designee's testimony as true, DBH took no action to preserve documents until March 6, 2018.  (Ex. G at 6–7). With regard to DCPS, the Office of the Attorney General's litigation hold letter—which DCPS never sent to relevant custodians—was not issued until almost a year and a half after the District knew of Plaintiff's claims, on May 9, 2019.  *Id.*

Plaintiff's claims that the District created a hostile work environment and retaliated against her for reporting Mr. Roe's conduct.

For example, during her deposition, the Principal testified that she was aware of complaints about Mr. Roe's behavior from Ms. Doe and other women at the school.  (Ex. I at 117–118, 133–139, 144–150, 159–60).  The Principal was unable to recall, however, whether she exchanged text messages about those complaints with Mr. Roe or the complaining women.  *See supra* at 6.

It is not farfetched to conclude that the Principal and Mr. Roe may have exchanged text messages about these complaints. Indeed, on a prior occasion the Principal provided Mr. Roe via email with private information related to an investigation opened against him for corporal punishment.  (Ex. I at 144–50).  Similar communications between the two may have been included in the text messages had they been preserved.  Further, in separate emails that the Principal exchanged with a teacher who accused Mr. Roe of touching her inappropriately and retaliating against her, the Principal specifically referenced text messages that she exchanged with the teacher.  (*Id.* at 136–39; Ex. J at Doe-19dv1173-00054233).

Text messages sent or received by Mr. Roe and the Principal about complaints against Mr. Roe could help establish: (1) a pattern of misconduct by Mr. Roe, (2) knowledge by the Principal of such misconduct, or (3) inadequacies in the Principal's response to allegations of sexual harassment and other inappropriate conduct, among other things.  However, because of the District's failure to preserve the text messages, Plaintiff has been deprived of this potentially critical evidence.

The text messages may also have been relevant to a separate issue: the degree of supervisory authority exercised by Mr. Roe over Ms. Doe. The record shows that the Smith

Elementary "Mental Health Team," of which Ms. Doe was a member, reported to Mr. Roe.  (Ex. I at 52–54).  Further, the Principal instructed Mr. Roe to "oversee" Ms. Doe's work, but the Principal could not recall her specific instructions to him.  (*Id.* at 63–64).  Text messages from Mr. Roe and the Principal could illuminate the nature of his authority and supervision, including what authority was delegated to Mr. Roe by the Principal.  This evidence could thus help establish that Mr. Roe's conduct was not peer-to-peer harassment, but rather abuse by a supervisor of a subordinate.

Plaintiff acknowledges that because ESI may be stored on multiple devices, a court may find that there is no prejudice where the same information may be obtained from another source. *Borum,* 332 F.R.D. at 46.  But here the messages are irredeemably lost and cannot be obtained from other custodians.  Messages between the Principal and Mr. Roe cannot be replicated by reviewing the ESI of other custodians since the two would be the only custodians in possession of such messages.  The same is true for any messages between the two and Mr. Morales—since his messages have likewise been deleted.  Further, the District has been unable to produce any of the Principal's or Mr. Roe's text messages from any other DCPS custodian.  Thus, the prejudice to Plaintiff is irremediable, except through sanctions requested in this motion.

The District may argue that Plaintiff is unable to prove the contents of the missing messages, and therefore that sanctions are inappropriate.  But such an argument misunderstands Rule 37(e).  To be sure, under the rule, Ms. Doe bears a burden to show that information was lost that "should have been preserved."  *See* Rule 37(e).  Here, the text messages of these critical witnesses undoubtedly should have been preserved, as the District itself acknowledged.  *See supra* at 15.  Upon this showing, the Court then assesses the existence of prejudice.  *See* Rule 37(e)(1).  However, in this phase of the analysis, the burden *is not* on Ms. Doe to establish the

contents of the missing messages.  *See* Fed. R. Civ. Pro. 37(e), Advisory Committee Notes to

2015 Amendment (noting unfairness in placing the burden on the party not responsible for the

destruction); *Agility Pub. Warehousing Co. K.S.C.P. v. DOD*, 2017 U.S. Dist. LEXIS 220625, at

*8 (D.D.C. Mar. 30, 2017).  At most, Ms. Doe is required to make "'a very slight showing that

the [missing] documents are relevant.'"  *Vasser v. Shulkin*, Civil Action No. 14-0185, 2017 U.S.

Dist. LEXIS 193174, at *18 (D.D.C. Nov. 22, 2017) (quoting *Gerlich v. DOJ*, 711 F.3d 161, 171

(D.C. Cir. 2013)) (cleaned up).  She has done so here based on the evidence cited above,

including: (1) evidence that each of the witnesses used their phones to exchange text messages

related to work, (2) evidence that the Principal exchanged text messages related to a complaint

against Mr. Roe, and (3) the Principal's uncertainty regarding whether she exchanged text

messages related to Ms. Doe's complaints in particular.  *See supra* at 6.

   2) **Mr. Morales**

   Mr. Morales testified that he was never instructed by anyone from the District

government to preserve text messages related to Ms. Doe or the instant case.  *See supra* at 8.  As

a result, messages from Mr. Morales's two cell phones that he used to exchange messages with

other District employees during the 2017 and 2018 school years were deleted.  *See supra* at 6–7.

The messages were deleted well after the District was placed on notice of Plaintiff's claims on

January 10, 2018.  *See supra* at 3, 6.  The only messages that survived were self-selected

messages that Mr. Morales emailed to himself in November 2018.  *See supra* at 7.

   The District may claim that it met its preservation obligations in this case by pointing to

its interrogatory responses claiming that it sent litigation hold letters to Mr. Morales in 2018 and

2019.  However, even accepting the District's representations about the letters as true for

purposes of the instant motion, they still fail to establish that the District satisfied its preservation obligations.[11]

Although Ms. Tapp stated that an email with litigation hold instructions was sent to Mr. Morales, Mr. Morales denied ever being told to retain text messages.  *See supra* at 8.  Accordingly, Mr. Morales either never received the message or did not understand it to require him to retain text messages.  In any case, the District did nothing to ensure Mr. Morales' compliance with the hold notice, which it was required to do.  *See DR Distribs., LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2021 U.S. Dist. LEXIS 9513, at *194 (N.D. Ill. Jan. 19, 2021) ("The issuance of a litigation hold does not end counsel's duty in preserving ESI . . . Counsel cannot simply issue a litigation hold and assume they are done with their role in preserving ESI . . . They must continue to monitor and supervise or participate in a party's efforts to comply with the duty to preserve.") (citing cases)).

For example, the District did not follow-up with Mr. Morales to ensure that he understood the hold notice, even though English is not Mr. Morales' first language and even

---

[11]     The District has refused to provide even redacted versions of the letters based on specious claims that the letters are privileged.  In fact, the District waived any claim of privilege by describing the contents of the letters in a court filing and interrogatory responses.  *See* (Ex. G at 6–7); (Dkt. 33 at 10–11); *see also Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 71–73 (D.D.C. 2017) (holding that "[t]o protect the attorney-client privilege, the holder must zealously protect the privileged materials, taking all reasonable steps to protect their disclosure" and concluding that agency waived privilege over document after making portions of document public) (internal quote omitted).  Moreover, even if privilege did attach, litigation hold letters are discoverable where the party holding the privilege fails to preserve evidence during litigation. *Major Tours, Inc. v. Colorel*, No. 05-3091(JBS/JS), 2009 U.S. Dist. LEXIS 68128, at *7 (D.N.J. Aug. 4, 2009) ("Although in general hold letters are privileged, the prevailing view, which the Court adopts, is that when spoliation occurs the letters are discoverable.") (citing cases).

However, Plaintiff has chosen not to pursue a motion to compel regarding the litigation hold letters because the existing record shows clearly that Mr. Roe and the Principal never received a hold letter and that the District made no efforts to ensure that Mr. Morales received, understood, and complied with any hold letter.

though it claims that it did follow up with other witnesses. (*See* Ex K. at 151–52, 167, 179–80). Nor did it make any effort to back-up the text messages on his phone—instead, it apparently relied solely on Mr. Morales to retain the messages. (*Id.*). This does not constitute "reasonable" efforts to preserve ESI.

Plaintiff has been prejudiced by the District's failure to preserve the messages. A central focus of Plaintiff's retaliation claim is her allegation that Mr. Morales spread confidential and false information about her to her coworkers in Mr. Morales' supervisory team, and further encouraged coworkers to avoid interacting with her. (Amend. Compl. ¶ 120). Mr. Morales admitted that he regularly exchanged messages with members of his supervisory team, but claimed he could not recall whether he also exchanged text messages about Ms. Doe with those clinicians. (Ex. H, Morales Tr. at 66–67, 87–88). Copies of the text messages between Mr. Morales and other members of the supervisory team would show whether Mr. Morales exchanged messages about Ms. Doe, and could have validated Ms. Doe's allegations that Mr. Morales retaliated against her by making disparaging comments about her to others. Now that the messages have been deleted, Plaintiff has been denied the opportunity to prove Mr. Morales' retaliation through documentary evidence.

Similarly, Mr. Morales claimed he could not recall whether he ever exchanged messages regarding Mr. Roe or whether he ever exchanged messages with the Principal of Smith Elementary. Had Mr. Morales' text messages been properly preserved, they would have shown any such text communications, or lack thereof, which could have supported Plaintiff's claims

that the District failed to take appropriate actions to prevent Mr. Roe's harassment.  (Amend. Compl. ¶ 113).[12]

Mr. Morales did remember that he "probably" exchanged text messages with Ms. Barnes in the fall of  2017 regarding Ms. Doe and her claims.  (Ex. H, Morales Tr. at 142–43).  This evidence could be crucial in establishing when Ms. Doe's supervisors understood that she was facing harassment from Mr. Roe.  Yet, the messages produced by Ms. Barnes show only messages between Mr. Morales and her after January 2018, when Ms. Doe submitted her formal complaint.  (Ex. O, Barnes Tr. at 108–09).  Thus, Plaintiff lacks messages that Mr. Morales believes he sent in the fall of 2017, and has no way of verifying that Ms. Barnes has produced all relevant messages between the two.

Like the Principal's and Mr. Roe's messages, Mr. Morales' messages cannot be recovered from other custodians.  Any messages between Mr. Morales, the Principal, and Mr. Roe are irredeemably lost—since all three custodians' messages have been deleted.  Further, regarding the messages between Mr. Morales and other supervisory team members, Plaintiff requested any relevant messages on the devices of the other District employees.  (Ex. D at 15, 17, 32).  The District responded cryptically that it "is not in possession of any responsive records."  (*Id.* at 6).

---

[12]    The District may argue that Mr. Morales' testimony that he cannot recall whether he exchanged further messages about Ms. Doe indicates that there has been no prejudice to Ms. Doe.  As explained *supra* at 17–18, that is not the proper analysis when considering sanctions under Rule 37.  Mr. Morales did not dispute that messages were deleted from his phone and are irretrievable.  It is not Plaintiff's burden to establish the contents of the missing messages.  Given Mr. Morales' testimony about his texting habits, and his uncertainty that the deleted messages contained communication relevant to this case, Ms. Doe has been prejudiced by the destruction of the messages.

Accordingly, the District made insufficient efforts to retain Mr. Morales' messages, which has significantly prejudiced Plaintiff because the messages would likely have contained information in support of her claims and because the content of the messages are irretrievable from other sources.

**E.**     **The Court should award appropriate sanctions.**

Given the District's unjustifiable failure to preserve evidence that is likely critical to this case, the Court should exercise its "broad" authority to sanction the District for its failure to preserve the messages.  Fed. R. Civ. Pro. 37(e), Advisory Committee Notes to 2015 Amendment. Specifically, the Court should take the following steps:

1. The Court should instruct the jury that the District failed to preserve text messages from Mr. Morales, the Principal, and Mr. Roe, despite having an obligation to do so, and that the jury may consider that fact, along with all the other evidence in the case, in making its decision.

We note that this does not amount to an adverse inference instruction, which Plaintiff does not seek here.  The rules specifically treat an instruction to the jury that it may consider a party's spoliation when evaluating the evidence as distinct from an instruction that the jury may or must consider the spoiled evidence "unfavorable" to that party.  *See* Fed. R. Civ. Pro. 37(e), Advisory Committee Notes to 2015 Amendment (explaining that "subdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision. These measures, which would not involve instructing a jury it may draw an adverse inference from loss of information, would be available under subdivision (e)(1) if no greater than necessary to cure prejudice."); *see also Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 U.S. Dist. LEXIS 216011 at \*7 (N.D. Ill.

Mar. 23, 2018) (recommending as a Rule 37(e)(1) sanction that the jury "be instructed that it may consider" defendant's destruction of text messages but that "the jury shall not be given specific instructions on any presumption or inference based on the destruction of the text messages").

2. The Court should permit Plaintiff to argue to the jury that the text messages would have contained evidence supporting her claims. *See* Fed. R. Civ. Pro. 37(e), Advisory Committee Notes to 2015 Amendment (listing as permissible sanction "permitting the parties to present evidence and argument to the jury regarding the loss of information"); *Vasser v. Shulkin*, Civil Action No. 14-0185, 2017 U.S. Dist. LEXIS 193174, at *21–22 (D.D.C. Nov. 22, 2017) (permitting plaintiff to argue to jury that evidence was previously in the defendant's control and would have proven facts material to plaintiff's claim).

3. The Court should prohibit the District from arguing that the missing messages never existed or that the messages would have supported its defenses.  *See* Fed. R. Civ. Pro. 37(e), Advisory Committee Notes to 2015 Amendment (listing as permissible sanction "forbidding the party that failed to preserve information from putting on certain evidence"); *Wells v. Berger, Newmark & Fenchel, P.C.*, Civil Action No. 07 C 3061, 2008 U.S. Dist. LEXIS 21608, at *21 (N.D. Ill. Mar. 18, 2008) (where defendants failed to preserve certain emails, prohibiting defendants from arguing that the lack of emails in evidence supported a finding that the emails never existed); *Eller v. Prince George's Cty. Pub. Sch.*, No. TDC-18-3649, 2020 U.S. Dist. LEXIS 234367, at *33 (D. Md. Dec. 11, 2020) (recommending as sanctions for failing to preserve documents that defendants be prohibited from arguing that the destroyed documents corroborated defendants' version of events and be prohibited from offering any evidence about the contents of the documents not already produced in discovery).

4. The Court should prohibit the District from offering any testimony or extrinsic evidence about the contents of the missing messages. *See Cahill v. Dart*, No. 13 C 361, 2016 U.S. Dist. LEXIS 169195, at *20 (N.D. Ill. Mar. 4, 2016) (recommending as sanction for defendants' destruction of a video tape that defendants be precluded from arguing or testifying as to the contents of the lost video, or from introducing notes about the deleted video) *recommendation adopted as modified to add additional sanctions by Cahill v. Dart*, No. 13 C 361, 2016 U.S. Dist. LEXIS 166831, at *1 (N.D. Ill. Dec. 2, 2016).

5. The Court should award Plaintiff attorneys' fees and costs expended by Plaintiff in litigating the spoliation issue, including time spent conferring with opposing counsel and deposing District witnesses regarding the missing messages. *See Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 50 (D.D.C. 2019) (awarding as monetary sanctions for spoliation reasonable attorneys' fees and costs incurred in "preparing for and conducting the portions of the depositions . . . relevant to the spoliation issues, and . . . [for] litigating the instant motion for sanctions").

6. The Court should award Plaintiff attorneys' fees expended for filing this motion. *See id.*

## III.    Conclusion

The District's flagrant disregard for its preservation obligations, compounded by its lack of candor with the Court and Plaintiff's counsel, has caused significant harm to Plaintiff.  Critical evidence is now unrecoverable, and Plaintiff's counsel has expended considerable time and resources uncovering the truth about the District's actions. To alleviate the prejudice to Plaintiff, the Court should issue the following sanctions: (1) Instruct the jury that the District failed to

preserve text messages from Mr. Morales, the Principal, and Mr. Roe, despite having an

obligation to do so, and that the jury may consider that fact, along with all the other evidence in

the case, in making its decision; (2) Permit Plaintiff to argue to the jury that the text messages

would have contained evidence supporting her claims; (3) Prohibit the District from arguing that

the missing messages never existed or that the messages would have supported its defenses; (4)

Prohibit the District from offering any testimony or extrinsic evidence about the contents of the

missing messages; (5) Award Plaintiff attorneys' fees and costs expended by Plaintiff in

litigating the spoliation issue, including time spent conferring with opposing counsel and

deposing District witnesses regarding the missing messages; and (6) Award Plaintiff attorneys'

fees expended for filing this motion.


Date:  May 21, 2021                          Respectfully submitted,

                                             /s/ Michael Ellement
                                             Daniel M. Rosenthal (D.C. Bar No. 1010473)
                                             Michael Ellement (D.C. Bar No. 1521035)
                                             JAMES & HOFFMAN, P.C.
                                             1130 Connecticut Avenue, N.W., Suite 950
                                             Washington, D.C. 20036
                                             (202) 496-0500
                                             (202) 496-0555 (facsimile)
                                             dmrosenthal@jamhoff.com
                                             mpellement@jamhoff.com



                                             *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.

/s/ Michael Ellement
Michael Ellement

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JANE DOE,

      *Plaintiff*,

    v.                                Case No. 1:19-cv-01173-CJN

DISTRICT OF COLUMBIA,

      *Defendant*.

**[PROPOSED] ORDER**

Plaintiff's Motion For Sanctions For Spoliation Of Evidence is hereby **GRANTED**.

To alleviate the prejudice to Plaintiff, the Court will issue the following sanctions:

(1) An instruction to the jury that the District failed to preserve text messages from Mr. Morales, the Principal, and Mr. Roe, despite having an obligation to do so, and that the jury may consider that fact, along with all the other evidence in the case, in making its decision;

(2) Plaintiff is permitted to argue to the jury that the text messages would have contained evidence supporting her claims;

(3) The District is prohibited from arguing that the missing messages never existed or that the messages would have supported its defenses;

(4) The District is prohibited from offering any testimony or extrinsic evidence about the contents of the missing messages;

(5) The Court awards Plaintiff attorneys' fees and costs expended by Plaintiff in litigating the spoliation issue, including time spent conferring with opposing counsel and deposing District witnesses regarding the missing messages; and

27

(6) The Court awards Plaintiff  attorneys' fees expended for filing the instant motion.


_____

Judge Carl. J. Nichols